# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JESSICA M. FITZGERALD a/k/a JESSICA FORIT and MICHELLE L. ALLEN a/k/a MICHELLE WINDEMULLER-ALLEN, individually, and collectively d/b/a VAPE JUNKIE EJUICE,<br><br>    Defendants. | Civil No. _____<br><br>**COMPLAINT WITH PERMANENT INJUNCTIVE RELIEF REQUESTED** |

Plaintiff, the United States of America, by its undersigned counsel, and on behalf of the United States Food and Drug Administration ("FDA"), respectfully represents to this Court as follows:

1. This statutory injunction proceeding is brought under the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. § 332(a), to permanently enjoin Jessica M. Fitzgerald a/k/a Jessica Forit and Michelle L. Allen a/k/a Michelle Windemuller-Allen, individually, and collectively d/b/a Vape Junkie Ejuice, from violating 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce, or causing the introduction or delivery for introduction into interstate commerce, tobacco products, within the meaning of 21 U.S.C. § 321(rr), that are adulterated and

misbranded.

## Jurisdiction and Venue

2. This Court has jurisdiction over the subject matter and all parties to this action under 21 U.S.C. § 332(a), 28 U.S.C. §§ 1331, 1337, and 1345.

3. Venue in this district is proper under 28 U.S.C. § 1391(b) and (c).

## Defendants

4. Defendant Jessica M. Fitzgerald does business under the fictitious name Vape Junkie Ejuice. Vape Junkie Ejuice is an unincorporated entity located in or around Fort Myers, Florida. In a Florida state application for registration of a fictious name, Defendant Fitzgerald, using the name "Jessica Forit," represented herself as Vape Junkie Ejuice's co-owner. According to the Florida Secretary of State, the mailing address for Vape Junkie Ejuice is situated in Cape Coral, Florida.

5. Defendant Michelle L. Allen a/k/a Michelle Windemuller-Allen does business under the registered fictious name Vape Junkie Ejuice. On her Facebook page, Defendant Allen represented herself as Vape Junkie Ejuice's co-owner.

## Defendants' Operations

6. Defendants manufacture, sell, and distribute finished electronic nicotine delivery system ("ENDS") products, specifically e-liquid products.

Defendants' manufacturing activities include mixing, bottling, and labeling their ENDS products. Defendants' products are intended for human consumption. In furtherance of their business, Defendants also operate a website: www.vapejunkieejuice.com. Through this website, customers may purchase Vape Junkie Ejuice's ENDS products. The website includes the history of Vape Junkie Ejuice and notes that Vape Junkie Ejuice was established in 2011 in Port Charlotte, Florida. The website adds that in 2016, Vape Junkie Ejuice established a retail location in Fort Myers, Florida.

7. Defendants also operate a Facebook page located at: https://www.facebook.com/VapeJunkieEjuice ("Defendants' Facebook page").

## **Defendants' ENDS Products Are Adulterated and Misbranded**

8. Defendants violated the Act by introducing or delivering for introduction, or causing the introduction or delivery for introduction into interstate commerce, adulterated and misbranded tobacco products. 21 U.S.C. § 331(a).

### *Defendants' ENDS Products Are Tobacco Products*

9. The Act defines "tobacco product" at 21 U.S.C. § 321(rr) to include "any product made or derived from tobacco, or containing nicotine from any source, that is intended for human consumption, including any component, part, or accessory of a tobacco product." A "tobacco product" within the meaning of 21 U.S.C. § 321(rr) is generally subject to the requirements in

21 U.S.C. Chapter 9, Subchapter IX.  *See* 21 U.S.C. § 387a(b) (providing that such subchapter shall apply to "all cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco and to any other tobacco products that [FDA] by regulation deems to be subject to this subchapter"); 81 Fed. Reg. 28974, 28975 (May 10, 2016) (deeming all products meeting the definition of "tobacco product" at 21 U.S.C. § 321(rr), except accessories of such newly deemed products, to be subject to such subchapter).

10. ENDS products generally meet the definition of "tobacco product" at 21 U.S.C. § 321(rr), and include: "devices, components, and/or parts that deliver aerosolized e-liquid when inhaled."  FDA, *Guidance for Industry: Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and Other Deemed Products on the Market Without Premarket Authorization (Revised)\** (Apr. 2020), at 9–10, https://go.usa.gov/xuvn5.  E-liquids "are a type of ENDS product and generally refer to liquid nicotine and nicotine containing e-liquids (i.e., liquid nicotine combined with colorings, flavorings, and/or other ingredients)."  *Id.*

11. Defendants' ENDS products are made or derived from tobacco, or contain nicotine from any source, and are intended for human consumption, and thus are "tobacco product[s]" within the meaning of 21 U.S.C. § 321(rr).

### *Defendants' ENDS Products Are New Tobacco Products*

12. The Act defines "new tobacco product" at 21 U.S.C. § 387j(a)(1) to

4

include "any tobacco product . . . that was not commercially marketed in the United States as of February 15, 2007."

13.     Defendants' ENDS products were not commercially marketed in the United States as of February 15, 2007, and thus are "new tobacco product[s]" within the meaning of 21 U.S.C. § 387j(a)(1).

*Pathways to Market for New Tobacco Products*

14.     A new tobacco product may receive FDA marketing authorization through any one of three pathways: (1) the premarket tobacco product application ("PMTA") pathway under 21 U.S.C. § 387j, through which FDA reviews a PMTA and issues a marketing granted order ("MGO") permitting marketing of the new tobacco product under 21 U.S.C. § 387j(c)(1)(A)(i) upon a finding that the product is appropriate for the protection of the public health; (2) the substantial equivalence ("SE") pathway under 21 U.S.C. § 387j(a)(2)(A)(i), through which FDA reviews a report submitted under 21 U.S.C. § 387e(j) (the "SE report") for the product and issues a substantial equivalence order (the "SE order") determining, among other things, that it is substantially equivalent to a tobacco product commercially marketed in the United States as of February 15, 2007, or a tobacco product marketed after that date, but which FDA previously determined to be substantially equivalent; or (3) the SE exemption pathway under 21 U.S.C. § 387j(a)(2)(A)(ii), through which FDA reviews an exemption request

5

submitted under 21 C.F.R. § 1107.1 and a report submitted under 21 U.S.C. § 387e(j)(1) (the "abbreviated report") for the product, and issues a "found-exempt" order pursuant to 21 U.S.C. § 387e(j)(3)(A).

15. A new tobacco product is required by 21 U.S.C. § 387j(a) to have premarket review unless it has an SE order or found-exempt order in effect. *See* 21 U.S.C. § 387j(a)(2)(A). A new tobacco product that is required by 21 U.S.C. § 387j(a) to have premarket review and does not have an MGO in effect under 21 U.S.C. § 387j(c)(1)(A)(i) is adulterated under 21 U.S.C. § 387b(6)(A).

16. A new tobacco product for which a "notice or other information respecting it was not provided as required" under the SE or SE exemption pathway, including an SE report or an abbreviated report, is misbranded under 21 U.S.C. § 387c(a)(6).

### *Defendants' ENDS Products Have Not Been Authorized by FDA and are Adulterated and Misbranded*

17. Defendants' ENDS products, as "new tobacco product[s]" within the meaning of 21 U.S.C. § 387j(a)(1), are required by 21 U.S.C. § 387j(a) to have premarket review, as they do not have an SE order or found-exempt order in effect. Defendants' ENDS products also do not have an MGO in effect under 21 U.S.C. § 387j(c)(1)(A)(i). Accordingly, Defendants' ENDS products are adulterated under 21 U.S.C. § 387b(6)(A).

18. In addition, neither an SE report nor an abbreviated report has been submitted for any of Defendants' ENDS products. Accordingly, Defendants' ENDS products are misbranded under 21 U.S.C. § 387c(a)(6).

### Defendants Engage in Interstate Commerce

19. Defendants sell their adulterated and misbranded products through Defendants' website to customers outside of the state of Florida. Specifically, on or about March 13, 2023, an adult purchased Vape Junkie Ejuice's BooBoo Berry 125ml 6mg 50vg/50pg finished e-liquid product from Defendants' website. Defendants shipped this adulterated and misbranded tobacco product from Cape Coral, Florida (located within the Middle District of Florida) to Maryland.

### Defendants' History of Violative Conduct

20. Defendants are aware that their practices violate the Act. FDA has repeatedly warned Defendants about their violative conduct and explained that continued violations could lead to enforcement action, including an injunction.

21. According to the Florida Secretary of State, Defendant Allen previously served as a manager-member of Exhale Vapor LLC. Exhale Vapor conducted business under the name Exhale Vapors Wholesale and Exhale Vapor Wholesale and Distributing. The principal and mailing addresses for Exhale Vapor LLC was situated in Cape Coral, Florida. Exhale Vapor LLC

operated the website: http://www.exhalevaporwholesale.com. This website marketed "Ooh La La Premium Eliquids." Through this website, a person under the federal minimum age for sale of tobacco products purchased the e-liquid product "oohlala PREMIUM ELIQUIDS Coco Puffs."

22. On or about October 20, 2016, FDA issued a Warning Letter to both Exhale Vapor LLC and Defendant Allen. The Warning Letter cited Exhale Vapor LLC and Defendant Allen for causing a tobacco product to become misbranded under 21 U.S.C. § 387c(a)(7)(B) by selling a tobacco product to a person under the federal minimum age for purchase of tobacco products. FDA received no response to the Warning Letter from either Exhale Vapor LLC or Defendant Allen.

23. Defendant Allen served as both the registered agent and sole officer Orgasmic Flavors Inc. According to the Florida Secretary of State, Orgasmic Flavors Inc. was incorporated on or about November 3, 2016, and was administratively dissolved on or about September 22, 2017. The principal and mailing addresses for Orgasmic Flavors Inc. were situated in Cape Coral, Florida. Orgasmic Flavors Inc. owned "Ooh La La Premium Eliquids."

24. On or about March 13, 2017, Defendant Allen registered "Ooh La La Premium Eliquids" as a fictitious business name in Florida. According to the Florida Secretary of State, the mailing address for "Ooh La La Premium

8

Eliquids" was situated in Cape Coral, Florida. This fictitious business name registration expired on or about December 31, 2022.

25. On or about August 13, 2017, on a Facebook page for "Ooh La La Premium Eliquids," a person named "Michele" announced that she consolidated all online sites for "Ooh La La Premium Eliquids." The announcement directed that all future online orders be placed via Defendants' website.

26. On or about April 12, 2022, FDA reviewed Defendants' website. A review of Defendants' website revealed that Defendants manufactured new e-liquid products and offered new e-liquid products for sale or distribution to customers throughout the United States.

27. On or about April 22, 2022, FDA issued a Warning Letter to Defendants. In the Warning Letter, FDA identified three e-liquid products (Granny Smith Apple, Cucumber, and Milk) that the Defendants sold without a marketing authorization order from FDA.

28. On or about May 26, 2022, FDA emailed Defendants at: vapejunkieejuice@gmail.com to request a teleconference regarding the issues raised in the Warning Letter sent on April 22, 2022.

29. On or about May 26, 2022, FDA received an unsigned email from vapejunkieejuice@gmail.com. This email stated: "I sent a letter of response in last week. It hasn't been 15 days since we received it."

30. On or about: September 30, 2022, October 13, 2022, November 15, 2022, and November 21, 2022, FDA attempted to contact Defendants via a phone number located on Defendants' website and Defendants' Facebook page. FDA left voicemails with Defendants to schedule a teleconference. FDA received no response from Defendants.

31. A review of Defendants' Facebook page revealed that Defendants continue to receive and fulfill orders for its ENDS products. On or about April 23, 2023, an announcement was posted onto Defendants' Facebook page. The announcement stated: "[d]ue to recent events, we have been behind... We are currently almost caught up... All old orders will ship out on Wednesday and Thursday." This announcement contained approximately 30 comments in response. Responses included exchanges between the Defendants and several users inquiring about the status of their respective orders.

32. FDA has no PMTAs on file from Defendants for their new tobacco products. In addition, FDA has not authorized the Defendants to market their new tobacco products.

### Request for Relief

33. Despite prior notifications, Defendants have not brought themselves in compliance with the Act. Unless restrained by this Court, Defendants will continue to violate the Act in the manner set forth above.

WHEREFORE, Plaintiff respectfully requests that the Court:

I. Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, assigns, if any, and any and all persons in active concert or participation with any of them, from doing or causing a violation of 21 U.S.C. § 331(a), by introducing or delivering for introduction, or causing the introduction or delivery for introduction into interstate commerce, tobacco products that are adulterated or misbranded;

II. Order that FDA be authorized pursuant to this injunction to inspect Defendants' places of business and websites, and all records relating to the manufacture, sale, and distribution of tobacco products, to ensure continuing compliance with the terms of the injunction, with the costs of such inspections to be borne by Defendants at the rates prevailing at the time the inspections are accomplished; and

III. Award Plaintiff its costs incurred in pursuing this action, including the costs of investigation to date, and such other equitable relief as the Court deems just and proper.

Dated: December 4, 2023

|  |  |
|---|---|
|  | Respectfully submitted, |
| OF COUNSEL: |  |
|  | ROGER B. HANDBERG |
| MARK RAZA | United States Attorney |
| Chief Counsel | Middle District of Florida |
| SHANNON SINGLETON | *s/Kevin R. Huguelet* |
| Acting Deputy Chief Counsel for Litigation | KEVIN R. HUGUELET |
|  | Assistant United States Attorney |
|  | 2110 First Street, Suite 3-137 |
| JOSHUA A. DAVENPORT | Ft. Myers, FL 33901 |
| Associate Chief Counsel | Phone: (239) 461-2237 |
| United States Department of Health and Human Services | E-Mail: kevin.huguelet@usdoj.gov |
| Office of the General Counsel | BRIAN M. BOYNTON |
| Food and Drug Division | Principal Deputy Assistant Attorney General |
| 10903 New Hampshire Avenue |  |
| Silver Spring, MD 20993 | Civil Division |
|  | ARUN G. RAO |
|  | Deputy Assistant Attorney General |
|  | AMANDA N. LISKAMM |
|  | Director |
|  | Consumer Protection Branch |
|  | ADAM E. LYONS |
|  | Assistant Director |
|  | *s/Colin W. Trundle* |
|  | COLIN W. TRUNDLE |
|  | Trial Attorney |
|  | JOSHUA A. FOWKES |
|  | Senior Trial Attorney |
|  | 450 Fifth Street, N.W. |
|  | Washington, D.C. 20530 |
|  | Phone: (202) 742-7112 |
|  | E-Mail: colin.trundle@usdoj.gov |

12